Commonwealth of Massachusetts
Superior Court

Essex, ss.

| | |
|---|---|
| Stephanie Rauseo, Thomas Giblin, ) | |
| John Franco, Anne Franco, ) | |
| Rose Cerundulo, Guy Cerundulo, ) | |
| John Walsh, on behalf of themselves ) | |
| And all others similarly situated ) | |
| ) | |
| v. ) | Docket No_____ |
| ) | |
| Town of Rockport ) | |

## Complaint

The Town of Rockport has collected parking revenues, in the form of meter payments, fines, and resident parking sticker fees for decades while materially not complying with the General Laws or the State and Federal Constitutions. This action, although growing out of a neighborhood dispute, is to prohibit and prevent future abuses of the public as well as restore wrongfully collected fees.

**TOC**
I—Background and Classes
II-Public Records
III—30A claim
IV—Anti-Delegation andVagueness
V—(Angled) Parking on Beach Street
VI—Illegal and Unconstitutional Revenue Generation
VII—Parking Ticket Laws

**Plaintiffs**

1. Stephanie Rauseo is a resident of Beach Street and has paid parking revenue to the Town of Rockport, including in the form of resident parking stickers.

2. Thomas Giblin is a resident of Beach Street. He has paid parking revenues to the Town of Rockport and wrongfully been ticketed. He has appealed his ticket through the Town's administrative process. He has paid for a resident parking sticker.

3. John Franco is a resident of Beach Street. He has paid parking revenues to the Town of Rockport.

4. Anne Franco is a resident of Beach Street. She has paid parking revenues to the Town of Rockport. Among other things, she has paid meter fees to park in the angled parking on Beach Street

5. Rose Cerundulo is a resident of Beach Street.  She has paid parking revenues to the Town of Rockport.  She has also, on several occasions, rented out the street and paid the meter fees to close the street for parties.

6. Guy Cerundulo is a resident of Beach Street.  She has paid parking revenues to the Town of Rockport.

7. John Walsh is a resident of Lynnfield.  He has paid parking revenues to the Town of Rockport.  He has also appealed through the Town's administrative process.

**Defendant**

8. The Town of Rockport is a municipality of the Commonwealth of Massachusetts located on the Northeastern portion of Cape Ann.  Formerly part of Gloucester, Rockport was established as an independent entity in 1839.  It is run by legislative charter, and features a traditional New England Selectmen-Town Meeting form of government.

**Putative Classes**
   **Class 1 Meters**
9. Class 1A is defined as all people who have paid parking meter fees to the Town of Rockport, between January 1, 2011 and August 1, 2021, for angled (head-on) parking in the off-street lot in front of 48, 50, 52 Beach Street.

10. Class 1B is defined as all people who paid parking meter fees to the Town of Rockport, between January 1, 2011 and August 1, 2021, for unauthorized on-street parking

11. Class 1C is defined as all people who paid any parking meter fee in the Town of Rockport between January 1, 2011 and August 1, 2021

   **Class 2 Tickets**
12. Class 2A is defined as all people who were ticketed for parking in the angled parking in front of 48. 50, 52 Beach Street in Rockport between January 1, 2011 and August 1, 2021.

13. Class 2B is defined as all people who were ticketed for parking in authorized on-street parking in Rockport between January 1, 2011 and August 1, 2021.

14. Class 2C is defined as all people who were ticketed for parking in Rockport in the Town of Rockport and appealed, between January 1, 2011 and August 1, 2021.

15. Class 2D is defined as all people who ticketed for parking in Rockport between January 1, 2011 and August 1, 2021.

16. Class 2E is defined as all people who were ticketed for parking in Rockport and were not accorded their first free offense per year in accordance with the statute between January 1, 2011 and August 1, 2021.

   **Class 3  Fiscal**

17. Class 3A is defined as all people who paid parking meter fees in Rockport between January 1, 2011 and August 1, 2021.

18. Class 3B is defined as all people who paid the Town of Rockport ticket fines for parking between January 1, 20211 and August 1, 2021.

19. Class 3C is defined as all people who paid municipal resident parking sticker fees in Rockport between January 1, 2011 and August 1, 2021.

**Incorporation**

20. The Plaintiffs hereby incorporate all of their arguments and factual assertions from their petition for rule-making submitted to the Town of Rockport in April 2021.  A copy of the petition and its appendix are attached herewith.

**Count II- Public Records Law**

21. The Plaintiffs, through counsel, requested all parking tickets issued by the Town of Rockport since June 2001 in April 2021.

22. The Town of Rockport answered through counsel that much of the request could or would not be provided, citing to laws including the federal Driver's Privacy Protection Act.  The Town did also explain that they had upgraded parking databases and that the current database only went back to 2019.  Full completion of the request, as best possible, would require reconstructing the prior database.

23. The Town estimated a fee for the work in the hundreds of dollars.  The fee was paid in full, in person, in cash, in the Rockport Town Hall within 3 weeks.

24. The Town subsequently produced an excel database containing entries from the current database, running from 7/1/2019 to 4/29/2021.  The provided database contained 7510 entries of parking tickets amounting to $253,595.00 in total paid monies for the period.

25. The Town also explained that it required further time to provide the data from the reconstruction of the earlier database.

26. To date, despite promises and the paid public record request fees, the Town has still not provided the results of the reconstruction.

### Count III—Failure to Act—Chapter 30A

27. In April 2021, the Plaintiffs submitted to the Town of Rockport, and its Selectmen, a petition for rule-making regarding traffic regulations and parking rules.

28. The petition, 25 pages of argument and a total of 318 pages with appendix, asserted a number of deficiencies with the Town of Rockport's parking regime.

29. Town officials have acknowledged the receipt of the petition in depositions. In the same depositions, the Town official were unable to agree about whose responsibility or jurisdiction the petition fell under. The only consensus among the officials was that nothing had been done.

30. 11 months have passed since the filing of the petition. The petitioners have not been giving any formal hearing, of any kind, in any venue in the Town's official apparatus. The Town has not even, formally, acknowledged receipt of the petition.

31. In fact, prior to the petition, the Town's traffic and parking committee had been in the process of a comprehensive re-write of the traffic regulations, but the Town abandoned this effort half-way through in the summer of 2020. The petitioners were disheartened, and brought a rule-making petition expressly to continue the effort.

32. The Town of Rockport, especially its Board of Selectmen, have not adopted or published, under G. L. c. 30A §4 regulations governing the submission, consideration and disposition of rule-making petitions such as the one in this case.

33. Under G. L. c. 30A §14(7), a court may "compel any action unlawfully withheld or unreasonably delayed."

34. The Plaintiffs are entitled to be heard on their petition and have it considered by a fair process.  This is particularly true where the petition raise acute public safety issues and widescale fiscal and regulatory issues for the Town of Rockport.

**Count IV—Vague and Anti-delegation doctrine**

35. This count repeats and incorporates arguments IIIa and IIIb from the petition for rule-making.

36. Town Meeting has abrogated its legislative responsibilities.  It has done so by passing a general bylaw which delegates, almost entirely, its authority to make traffic and parking regulations to the Board of Selectmen.  The general bylaw does not have a discernible intelligible principle to guide the Selectmen executing this duty.

37. The delegation has the effect of allowing Rockport to punish violations in through a wide variety of means.  The different means change the penalties and the potential nature of the violation.  This places an unacceptable level of discretion in the enforcing officer, in violation of Constitutional due process vagueness principles.

38. Under the present rules, regulations, statutes, and bylaws, parking violations in Rockport may, at the discretion of the enforcing official, be punished as a criminal bylaw violation, a civil bylaw violation, through the CMVI statute, though some of the Town's zoning bylaws, or traffic regulations.  Through the enforcing officer's choice of route, he can change the constitutional protections afford to the defendant, depriving someone of a trial, the benefits of the ticket-fixing law, change the applicable statute of limitations, and even change which penalty is applicable.

39. Because the relevant laws conflict with each other on the proscribed penalties and other limitations, the laws are vague and do not fairly warn the citizenry of the penalties they face.

40. For these violations the Court must, under this Count, apply the remedy discussed in <u>Commonwealth v. Petralia</u> and hold that all the on-street parking regulations are void and that, until replacement regulations are enacted, there can be no legal on-street parking in the Town of Rockport.

**Count V—(Angled) Parking at Beach Street**

41. This count incorporates argument III from the rule-making petition, ¶¶31-43.

42. Between 48 and 52 Beach Street, the Town of Rockport has extend diagonal parking designed to service the Back Beach area.

43. The angled parking on Beach Street is ultra vires, because the Rockport Traffic Rules and Regulations authorize only two angled parking sections, on Mt. Pleasant Street and School Street, neither of which is near or adjacent to the Beach Street angled parking.

44. The Rockport Traffic Rules and Regulations treat the Beach Street spaces as an off-street lot.  However, the Town has not adopted the optional state statute which allows off street lots (G. L. c. 40 §§22B, 22C).  Thus the Town neither complies with the state statutes nor its own regulations.

45. The Massachusetts State Archives report shows no return of vote accepting §§22B, 22C.

46. MassHighway is entitled to regulate conditions upon state highways, like Route 127 in Rockport, and ways leading to or from them.

47. MassHighways regulations require special approval for angled parking.

48. The MassHighway report indicates an approved special speed regulation for Beach Street, but no approval for angled parking on Beach Street.

49. The off-street lot, even if it was allowed, is twice the size specified for it in the Rockport Traffic Regulations, measuring at 198 feet instead of the regulation's 100 feet.

50. The Town, even if it had adopted §22B, could not have the angled parking, since it does not comply with the distance regulations within §22B requiring proximity to commercial districts.

51. Although the subject of contest, the Town also does not own in fee simple, the land upon which the angled parking spaces on Beach Street currently exist.

52. Additional end-on parking on Beach Street toward the Granite Street intersection is ultra vires, being signed and painted but not authorized by the Town's regulations.  There are now 6 parking spaces, end-on street parking, on Beach Street's northern end which do not comply with the 420 foot measurement in Rockport's regulations.

**Count VI—Illegal and Unconstitutional Revenue Generation from Parking**

53. This Count incorporates Argument VI from the rule-making petition, ¶¶67-78.

54. The statute authorizing the installation of parking meters, which Rockport has adopted, limits the fees that may be charged and what may be done with the collected monies.

55. Specifically, the fees many only be small.  A necessary and minor cost to defray the cost of parking administration for the public benefit.  In that vein, the statute allows collected monies to be spent upon parking related expenses, without legislative appropriation of money from Town Meeting.

56. The Town's parking revenue fund accounts for roughly $400,000 per year.  However, meter fees appear to be a little under half of this amount (about $190,000), with parking ticket fines making up the lion's share.

57. The Town's fiscal experts and administrators openly regard parking monies as general revenue.

58. The meter fees that the Town charges are too high for the statutory purposes authorized.  The Town spends the money on unauthorized purposes.  The Town also mismanages the parking funds, despite prior warning when audited by the State Department of Revenue in 2000.

59. The Town is engaged in hypocritical behavior.  The Town, in 1959, adopted local option statute G. L. c. 148 §56 which allows the Town to require a permit for commercial parking.  The Town continues to issue these permits.  Yet the Town has not granted itself a permit or sought a hearing for it conducting its own for-profit parking operation.

60. The Town is constitutionally prohibited from running a for-profit parking operation.  Opinion of the Justices, 297 Mass. 559 (1937).  The Court held that a municipality cannot run a for-profit parking operation in the public right-of-way, since the public right-of-way is for travel not stopping.  Moreover, to collect anything other than a "small" or "token" fee for parking deprives the underlying fee owner of productive use of the property, or so the Court held.  Some constitutional line-drawing is necessary, although the standard must be deferential to policy-maker's the Town of Rockport has exceeded the range of deference by charging extortionate fees on land it does not own.  Several of the Plaintiffs, Rauseo, Franco, Cerundulo, are underlying fee owners who own property along and

underneath the Beach Street, for example.  The fee charged must ben an incident to travel and are constitutionally restricted to only those expenses necessary to parking regulation. In fact, the Legislature recently amended §22A in a manner to expand the statutory authorization beyond the constitutional restriction, rendering parts of it void.

**Count VII—Parking Ticket Law**

61. This count is meant to incorporate Argument VII from the rule-making petition, ¶¶79-89. This count specifically alleges constitutional due process issues, although they are present in some other Counts as well.

62.  The Town has contravened the parking ticket laws in several material regards.

63. The Town has failed to accord the first-offense-free provision of G. L. c. 90 §20A on several occasion, such as to Mr. Giblin and Mr. Walsh.  Although Town records, and anecdotal evidence supports that idea that Town officials have on several occasions provided this benefit, it has also failed to do so even when asked.

64. The Town's parking guidance, in writing and on its website, intermittently refers to either G. L. c. 90 §20A or §20A½.  This is an open inducement for motorists to make mistakes of law when the government offers an assurance that one, or the other, statute applies and then only using the statute which suits the Town at the particular moment.

65. The Town's parking clerk's website guidance expressly contradicts the hearing provisions of both statutes.  Both statutes grant a right to mail adjudication, in-person hearing, or both at the motorist's option.  The Town's website and its appeal form force motorists to choose either mail adjudication or a hearing, forfeiting the other option contrary to the express terms of the statute.  Thus, state law grants the motorist a right to a due process hearing and the Town opts in to take the hearing right away.  The Town's guidance does do explicitly misrepresenting the contents of the statutes.

66. The Town's parking guidance, and appeal form, announce that the adjudication is final, which it is not pursuant to the terms of the statutes which allow Chapter 30A review. Indeed, under Chapter 30A, and the parking ticket laws, the Town is obliged to notify the motorist that they do have an appeal right and the forum into which they may appeal. The Town is affirmatively misleading people regarding the laws and their procedural legal rights.

67. The Town's process for parking ticket appeals is erroneous.  It does not afford a neutral arbiter.  The Town contravenes both parking ticket laws by commanding a "formal"

hearing where the statutes provide for informal hearings.  The Town also misleading commands a "formal" hearing but does not use the State's formal rules for adjudication (801 CMR 1.01(1)).  Indeed there is a statutory conflict between Chapter 30A and Chapter 90 as to rules for parking hearings.

68. The Town's civil rights abuses (due process and vagueness) are years long.  They have also continued to occur after the Town was put on actual notice, in 2018 by Mr. Walsh, and by the rule-making petition in 2020.  Continuing a flawed process, after actual notice, is malicious.

**Miscellaneous**

69. This Court has subject-matter jurisdiction since there are federal questions involved (such as the Plaintiffs pleading for due process and vagueness civil rights claims).  Also the Plaintiffs bring a class action featuring motorists from far-flung corners of the Unites States.

70. The Court has personal jurisdiction since the Town of Rockport is sited within the State of Massachusetts.

71. Venue in Boston is proper under federal law and local rules.

**Relief**

72. The Plaintiffs plead for certification of their classes.

73. The Plaintiffs plead for the return of wrongfully taken (or paid) parking meter fees

74. The Plaintiffs plead for the return of wrongfully taken (or paid) parking ticket fines

75. The Plaintiffs plead for nominal damages on behalf of the classes for due process violations alleged.

76. The Plaintiffs plead for equitable relief to stop the unauthorized parking, the collection of unauthorized and unconstitutional fees, and for the correction of the practices and procedures of the departments of Rockport responsible for administering the parking laws.

                        Respectfully Submitted,

                        Stephanie Rauseo, Thomas Giblin Anne and John Franco, Rose and Guy Cerundulo, and John Walsh,
By their attorney,
/S/ Michael Walsh
Michael Walsh

Walsh & Walsh LLP
PO Box 9
Lynnfield, MA 01940
617-257-5496
Walsh.lynnfield@gmail.com

March 2, 2022